# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHELLE MEZA and STEVE MEZA, Individually and on Behalf of All Others Similarly Situated,<br><br>　　　　　　　　　　　Plaintiffs,<br><br>v.<br><br>SIRIUS XM RADIO INC.,<br><br>　　　　　　　　　　　Defendant. | Case No.: 17-CV-02252-AJB-JMA<br><br>**ORDER:**<br><br>**(1) DENYING WITHOUT PREJUDICE DEFENDANT'S MOTION TO STRIKE PLAINTIFFS' CLASS ALLEGATIONS, AND**<br><br>**(2) DENYING DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT (Doc. No. 55)** |

Presently before the Court is Defendant Sirius XM Radio Inc.'s ("Sirius XM") motion to strike class allegations, and motion to dismiss the Complaint. (Doc. No. 55.) Plaintiffs Michelle Meza and Steve Meza ("Plaintiffs") opposed the motion, (Doc. No. 62), and Defendant replied, (Doc. No. 63.) The United States of America also opposed the motion, and filed a brief in support of the constitutionality of the Telephone Consumer Protection Act of 1991 ("TCPA"), 42 U.S.C. § 227(b)(1)(A)(iii). (Doc. No. 64.) For the reasons set forth below, the Court **DENIES WITHOUT PREJUDICE** Sirius XM's motion to strike the class allegations, and **DENIES** Sirius XM's motion to dismiss Plaintiffs' Complaint.

1

## I. BACKGROUND

### A. Plaintiffs' Allegations

This is a putative class action alleging violation of the TCPA. On or before July of 2016, Plaintiffs allege they purchased a Hyundai Sonata which included a "free" three-month trial subscription to Sirius XM Radio. (Doc. No. 1, Complaint ("Compl.") ¶ 9.) According to Plaintiffs, at no time did Plaintiffs provide their current cellular telephone numbers. (*Id.* ¶ 10.) But around October of 2016, Sirius XM apparently contacted Plaintiffs on their respective cellphones. (*Id.* ¶ 12.) It is Plaintiffs' contention that the calls were placed using an "automatic telephone dialing system," ("ATDS") and an "artificial or prerecorded voice" in violation of the TCPA. (*Id.* ¶ 13.) The calls were made in an effort to convince Plaintiffs to pay to extend Sirius XM's radio service following expiration of the free trial. (*Id.* ¶ 14.) Plaintiffs expressed to Sirius XM they were not interested in the service, but nevertheless continued to receive calls to their cellphones. (*Id.* ¶ 14–15.) Plaintiffs allege that at the beginning of some of the calls, there was a long pause before a live agent of Sirius XM would come on the line, which Plaintiffs claims demonstrates that the telephone dialing equipment used by Sirius XM has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator. (*Id.* ¶ 19.)

### B. The *Hooker* Settlement

On November 3, 2017, Plaintiffs filed suit in this Court. (Doc. No. 1.) However, Sirius XM states that in 2013, before this action was filed, another plaintiff by the name of Francis Hooker brought a class action in the United States District Court for the Eastern District of Virginia against Sirius XM, alleging Sirius XM had violated the TCPA by using ATDS equipment to call class members' cell phones. *See Hooker v. Sirius XM Radio Inc.*, Case No. 13-CV-3 (E.D. Va. 2013) ("*Hooker* Action"). The same attorneys that represented the plaintiff in the *Hooker* Action, Abbas Kazerounian and Jason Ibey, also represents Plaintiffs here. (Doc. No. 55-1 at 6.) Attorneys Kazerounian and Ibey also represented a *Hooker* companion case in this Court in 2012, *Knutson v. Sirius XM Radio Inc.*, Case No. 12-CV-418-AJB-DHB (S.D. Cal. 2012) ("*Knutson* Action"). The *Knutson*

2

Action similarly alleged the use of ATDS equipment to call cell phones in violation of the TCPA. (Doc. No. 55-1 at 6.)

Sirius XM settled the claims in *Hooker*, *Knutson* and two other companion cases. *See Hooker v. Sirius XM Radio Inc.*, Case No. 13-CV-3 (E.D. Va. 2013), Doc. No. 186-2 at 6. The *Hooker* settlement contained specific provisions regarding the equipment that Sirius XM's telemarketing vendors would use going forward in dialing wireless numbers. (Doc. No. 55-1 at 7.) Sirius XM contended it never used equipment that generated and dialed random or sequential numbers. (*Id.*) Instead, the equipment dialed numbers from a list of Sirius XM subscribers. (*Id.*) However, before *Knutson* and *Hooker*, "that equipment operated in different modes depending on whether the calls were made to wireless numbers (covered by the ATDS provision) or landlines (not covered)." (*Id.*) When calling landlines, the equipment operated in "predictive" mode by dialing a group of numbers from a list at once, doing so based on a prediction of the likely number of answered calls, and then connected the calls that actually were answered to live agents. (*Id.*) By contrast, when calling wireless numbers, the equipment operated only in "preview" mode in which a computer would preview a specific telephone number from the list to a live agent. (*Id.*) The agent would make a decision to click to initiate the call, and the agent would remain on the line throughout the entire call, repeating the process with a new number after the call ended. (*Id.*)

As part of the *Hooker* settlement, Sirius XM agreed its vendors would use separate and distinct systems to contact landline and wireless numbers. (*Id.*) Specifically, when calling wireless numbers, Sirius XM agreed to require its vendors to use manual telephone dialing systems that utilize human intervention to initiate calls and that are separate and distinct from any automatic dialing systems, including any predictive dialing systems, used by those vendors to call landline phones. (*Id.*)

### C. This Action and its Procedural History

On November 3, 2017, after the parties settled in *Hooker*, Plaintiffs—represented by the same attorneys from *Hooker*—brought an action against Sirius XM in this Court

3

17-CV-02252-AJB-JMA

alleging TCPA violations. (Doc. No. 1.) On January 2, 2018, Sirius XM moved to dismiss or stay Plaintiffs' Complaint. (Doc. No. 16.) Sirius XM moved to dismiss based on (1) Plaintiffs' failure to plead that Sirius XM used an ATDS, and (2) the unconstitutionality of the TCPA provision Plaintiffs relied. (Doc. No. 16-1 at 11–16.) More specifically, Sirius XM argued 47 U.S.C. § 227(b)(1)(A)(iii), which prohibited the use of ATDS equipment or prerecorded voices to call cell phone numbers "unless such call is made solely to collect a debt owed to or guaranteed by the United States" was unconstitutional because it was a content-based restriction not passing muster under strict scrutiny. (*Id.* at 14.) Sirius XM also moved to strike the class allegations. (*Id.* at 16.) Lastly, Sirius XM moved for a stay pending the D.C. Circuit's review of the FCC's 2015 Declaratory Ruling, which set forth the FCC's interpretation of the ATDS provision. (*Id.* at 8.) The United States intervened to oppose Sirius XM's assertions of unconstitutionality and filed a brief in support of the TCPA. (Doc. No. 36.)

On September 25, 2018, the Court stayed the litigation pending the outcome of several Ninth Circuit cases that would address the constitutionality of the TCPA's debt-collector exemption. (Doc. No. 50 at 6–9.) On June 13, 2019, the Ninth Circuit issued an opinion in *Duguid v. Facebook, Inc.*, 926 F.3d 1146 (9th Cir. 2019). In *Duguid*, the Ninth Circuit held that: (1) the debt-collection exception was content-based and subject to strict scrutiny analysis, (2) the debt-collection exception was unconstitutional, and (3) the debt-collection exception was severable from the rest of the TCPA. 926 F.3d 1146, 1153–57. Likewise, a month later in *Gallion v. United States*, the Ninth Circuit reaffirmed the holding in *Duguid*, and once again stated the debt-collection exception was unconstitutional but severable from the remainder of the TCPA. 772 F. App'x 604, 605 (9th Cir. 2019).

On July 9, 2019, in light of *Duguid* and *Gallion*, this Court lifted the stay. (Doc. No. 54.) The Court also granted Sirius XM permission to file an amended motion to dismiss. (*Id.* at 2.) Sirius XM filed its amended motion to strike Plaintiffs' class allegations, and motion to dismiss on August 6, 2019. (Doc. No. 55.) In its motion to dismiss, Sirius XM again raises another constitutional challenge to the TCPA. (Doc. No. 55-1 5–6.) Sirius XM

argues that the autodialer provision, as construed by the Ninth Circuit in *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041 (9th Cir. 2018), violates the First Amendment "because it is a wildly overbroad restriction on protected speech" and "renders every smartphone an ATDS." (Doc. No. 55-1 at 6.) Plaintiffs opposed Sirius XM's motions, and the United States filed a brief in support of the constitutionality of the TCPA. (Doc. Nos. 62, 64.) Sirius XM replied to both oppositions. (Doc. Nos. 63, 65.) This order follows.

## II. REQUEST FOR JUDICIAL NOTICE

Plaintiffs request judicial notice of three documents filed in the *Hooker* Action in the United States District Court for the Eastern District of Virginia. (Doc. No. 62-1 at 1.) Judicial notice is sought for: (1) the final order approving settlement and certifying the settlement class; (2) the settlement agreement in *Hooker*; and the docket report in *Hooker*. (*Id.*) Sirius XM does not oppose this request.

Federal Rule of Civil Procedure 201 permits a court to take judicial notice of an adjudicative fact if it is "not subject to reasonable dispute." Fed. R. Evid. 201(b). A fact is "not subject to reasonable dispute" if it is "generally known," or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(1)-(2). Under this rule, a court may "take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment," but it "cannot take judicial notice of disputed facts contained in such public records." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018).

Under Rule 201, judicial notice of the final order approving settlement, the settlement agreement, and the docket report in *Hooker* is appropriate. "Courts have consistently held that courts may take judicial notice of documents filed in other court proceedings." *See NuCal Food, Inc. v. Quality Egg LLC*, 887 F. Supp. 2d 977, 984 (E.D. Cal. 2012). However, "[w]hile the authenticity and existence of a particular order, motion, pleading or judicial proceeding, which is a matter of public record, is judicially noticeable, veracity and validity of its contents . . . are not." *United States v. S. Cal. Edison Co.*, 300

F. Supp. 2d 964, 974 (E.D. Cal. 2004). Based on this authority, the Court **GRANTS** Plaintiffs' request for judicial notice.

### III. LEGAL STANDARDS

#### A. Motion to Strike

Under Federal Rule of Civil Procedure 12(f), the court may "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The function of a Rule 12(f) motion is "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Whittlestone, Inc. v. Handi–Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010). Rule 12(f) motions to strike are generally regarded with disfavor because of the limited importance of pleading in federal practice, and because they are often used as a delay tactic. *See California Dept. of Toxic Substances Control v. Alco Pacific, Inc.*, 217 F. Supp. 2d 1028, 1033 (C.D. Cal. 2002). Motions to strike are generally not granted unless it is clear that the matter sought to be stricken could have no possible bearing on the subject matter of the litigation. *In re Wal–Mart Stores, Inc. Wage and Hour Litigation*, 505 F. Supp. 2d 609, 614 (N.D. Cal. 2007). Any doubt concerning the import of the allegations to be stricken weighs in favor of denying the motion to strike. *Id.*

Moreover, "[d]ismissal of a class at the pleading stage is rare because 'the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action.'" *Mirkarimi v. Nevada Prop.1, LLC*, Case No. 12-cv-2160-BTM-DHB, 2013 WL 3761530, at *4 (S.D. Cal. July 15, 2013) (quoting *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 160 (1982)). Thus, "[a]lthough it is not per se improper for a defendant to move to strike class allegations before the motion for class certification, most courts decline to grant such motions because the shape and form of a class action evolves only through the process of discovery." *Simpson v. Best W. Int'l, Inc.*, Case No. 3:12-cv-4672-JCS, 2012 WL 5499928, at *9 (N.D. Cal. Nov. 13, 2012) (internal citation and quotations omitted).

### B. Motion to Dismiss

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the pleadings and allows a court to dismiss a complaint upon a finding that the plaintiff has failed to state a claim upon which relief may be granted. *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

A complaint or counterclaim generally must satisfy the minimal notice pleading requirements of Federal Rule of Civil Procedure 8(a)(2) to evade dismissal under a Rule 12(b)(6) motion. *A.E. ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012). Rule 8(a)(2) requires that a pleading stating a claim for relief contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed R. Civ. P. 8(a)(2). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint does not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement,'" and the reviewing court need not accept "legal conclusions" as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235–36 (3d ed. 2004)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Hartmann v. Cal. Dept. of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). "[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the

complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323 (2007).

## IV. DISCUSSION

Sirius XM urges the Court to strike the class allegations from the Complaint, or dismiss the Complaint entirely based on the unconstitutionality of the TCPA provision which Plaintiffs rely. (Doc. No. 55-1 at 11, 14.) The Court will address each motion in turn.

### A. Motion to Strike Plaintiffs' Class Allegations

#### 1. Sirius XM's Motion to Strike To the Extent Plaintiffs Challenge Sirius XM's Dialing Practices

As an initial matter, Sirius XM requests that to the extent Plaintiffs are challenging Sirius XM's dialing practices generally, Plaintiffs' class allegations should be stricken because Plaintiffs' counsel has a conflict of interest. (Doc. No. 55-1 at 11.) This alleged conflict of interest arises out of the purported conflicting arguments Plaintiffs' counsel will have to make in this case, and the position counsel advocated for in the *Hooker* Action. In particular, the putative class members here may have an interest in arguing that Sirius XM's dialing practices, as authorized by the *Hooker* settlement, violate the TCPA. (*Id.* at 12.) But according to Sirius XM, Plaintiffs' counsel cannot effectively make such an argument because the same counsel argued for Sirius XM to adopt those very practices in *Hooker*, and agreed that the practices complied with the TCPA. (*Id.*) In opposition, Plaintiffs respond by pointing out that Plaintiffs seek to represent a putative class covering a time period not covered by the *Hooker* settlement class, thus precluding a finding of a conflict of interest. (Doc. No. 62 at 11.) Additionally, Plaintiffs assert a motion to strike is premature before discovery can be conducted, and before a motion for class certification. (*Id.* at 12.)

The Court finds Plaintiffs' position persuasive. In effect, Sirius XM challenges the adequacy of class counsel under Federal Rule of Civil Procedure 23. The requirement of adequate representation asks whether the representative "will fairly and adequately protect the interests of the class." *See* Fed. R. Civ. P. 23(a)(4). Courts are to inquire (1) whether

8

the named plaintiffs and counsel have any conflicts of interest with the rest of the class and (2) whether the named plaintiff and counsel will prosecute the action vigorously for the class. *Olney v. Job.com, Inc.*, No. 1:12-CV-01724-LJO, 2013 WL 5476813, at *14 (E.D. Cal. Sept. 30, 2013). However, "courts may not resolve 'disputed and substantial factual or legal issue[s] in deciding . . . a motion to strike.'" *Whittlestone*, 618 F.3d at 973. While class allegations can be stricken at the pleadings stage if the claim could not possibly proceed on a classwide basis, "it is in fact rare to do so in advance of a motion for class certification." *Cholakyan v. Mercedes–Benz USA, LLC*, 796 F. Supp. 2d 1220, 1245 (C.D. Cal. June 30, 2011); *AIIRAM LLC v. KB Home*, No. 19-CV-00269-LHK, 2019 WL 3779185, at *8 (N.D. Cal. Aug. 12, 2019) ("[T]he district court cases holding that a 'potential conflict of interest' can render a class representative inadequate or class counsel inappropriate were all decided on motions for class certification, not motions to strike or dismiss.").

Here, in order to rule on this motion to strike, the Court would have to delve into factual and legal issues before determining whether a conflict of interest in fact exists. For example, Sirius XM is concerned about the appearance of impropriety if counsel "assumes a certain position in a legal proceeding," "succeeds in maintaining that position," and later, is allowed to assume a contrary position "simply because [their] interests have changed." (Doc. No. 55-1 at 12 (quoting *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001).) Indeed, Sirius XM insists Plaintiffs' counsel cannot attest to the legality of Sirius XM's dialing practice in *Hooker*, and then turn in an about-face and argue those same practices violate the TCPA. (*Id.*) But in order to resolve whether there is in fact a conflict of interest, discovery could be helpful in determining whether those same practices are even at issue. If, for instance, discovery reveals that an ATDS was not used, or Sirius XM has adopted different dialing practices, then it necessarily follows that Plaintiffs' counsel would not have a conflict of interest. Although Plaintiffs' counsel may eventually turn out to be inadequate class counsel, that question should be saved for another day as the Court must test whether Plaintiffs satisfy Rule 23 against evidentiary proof. *See Sandoval v. Ali*, 34 F.

Supp. 3d 1031, 1046–47 (N.D. Cal. 2014) (declining to consider whether to disqualify class counsel prior to class certification). As such, a motion to strike is an improper vehicle to test the purported conflict of interest here, the issue of adequacy of counsel may more appropriately be addressed in the context of a motion for class certification.

### 2. Sirius XM's Motion to Strike To the Extent Plaintiffs Only Seek to Challenge Sirius XM's Compliance with the *Hooker* Settlement

Alternatively, Sirius XM argues that to the extent Plaintiffs seek only to challenge Sirius XM's compliance with the *Hooker* settlement, the Court should dismiss Plaintiffs' Complaint in favor of the *Hooker* court, or limit Plaintiffs' claims to only a challenge to compliance with the terms of the *Hooker* settlement, and not a challenge to the legality of the dialing practices specified in that settlement. (Doc. No. 55-1 at 14.)

In arguing that the Complaint should be dismissed, Sirius XM draws attention to the fact that the *Hooker* court retained "continuing and exclusive jurisdiction over . . . the execution, consummation, administration, and enforcement of the terms of the Settlement Agreement." *See Hooker v. Sirius XM Radio Inc.*, Case No. 13-CV-3 (E.D. Va. 2013), Doc. No. 209 at 6. But as Plaintiffs point out, they seek to represent a different class of individuals called by Sirius XM than the class that was at issue in the *Hooker* Action. (Doc. No. 62 at 11.) The proposed class period here is July 6, 2016 through November 3, 2017, whereas the class period in the *Hooker* Action covered a period that ended in July 5, 2016. (*Id.*) Further, there is no indication that the *Hooker* court sought to deprive all other courts of jurisdiction to hear TCPA disputes against Sirius XM. Indeed, the final order in *Hooker* only states that jurisdiction applies to "*the parties, including all members of the Settlement Class*, and the execution, consummation, administration, and enforcement of the terms of the Settlement Agreement." (Doc. No. 62 at 12 (emphasis added).) There is no mention of non-settlement class members.

It is also not necessary to restrict Plaintiffs to only arguing noncompliance with the *Hooker* settlement agreement, given that Plaintiffs were not parties to that agreement. Indeed, Plaintiffs and the putative class do not appear to be from the same class period as

10

17-CV-02252-AJB-JMA

those class members called by Sirius XM in the *Hooker* Action. Of course, Plaintiffs' counsel should be mindful of their ethical obligations to their clients and this Court in light of their representations to the *Hooker* court. However, at this time, the Court does not find sufficient reasons to warrant limiting Plaintiffs at the pleading stage.

* * *

In summation, striking the class allegations at the pleading stage is an extreme and harsh measure the Court is not willing to take at this time. Accordingly, the Court **DENIES WITHOUT PREJUDICE** Sirius XM's motion to strike Plaintiffs' class allegations.

### B. Motion to Dismiss

Next, the Court will turn to Sirius XM's motion to dismiss the Complaint. (Doc. No. 55-1 at 16.) Sirius XM's sole ground for dismissing the Complaint is that Sirius XM may not be held liable for its alleged violations of the TCPA's ATDS provision because that provision, as interpreted by the Ninth Circuit in *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041 (9th Cir. 2018), violates the First Amendment as an overbroad restriction on protected speech. (*Id.*) In particular, Sirius XM maintains that the Ninth Circuit's interpretation in *Marks* results in all smartphones qualifying as ATDS equipment. (*Id.* at 17.)

#### 1. Background on the TCPA

Passed in 1991, the TCPA makes it unlawful for any person "to make any call . . . using any automatic telephone dialing system" to certain types of telephones without the called party's prior express consent. 47 U.S.C. § 227(b)(1)(A)(iii). The term "automatic telephone dialing system"—which has remained the same since its enactment—is defined as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1); *Duguid v. Facebook, Inc.*, 926 F.3d 1146, 1149 (9th Cir. 2019). By 2003, the FCC became concerned with the advent of "predictive dialers," which did not "dial[] a random or sequential block of numbers," but rather "automatically dialed a list of numbers that had been preprogrammed and stored in the dialer." Rules & Regulations

Implementing the Tel. Consumer Prot. Act of 1991, 18 FCC Rcd. 14,014, 14,017, 14,022 (2003). Naturally, this led to the question of whether these "predictive dialers" qualified as ATDS equipment, subject to the purview of the TCPA. Answering this question required evaluation of whether the predictive dialer equipment was "automatic." *Marks*, 904 F.3d at 1045.

Ultimately, the FCC determined that predictive dialers qualified as an ATDS, even if they did not generally generate or store random or sequential numbers. *Id.* In its 2003 ruling, the FCC explained that a predictive dialer may have the "capacity" to dial random and sequential numbers, even if it was not currently being used for such a purpose. *Id.* Then in 2015, the FCC established that a device could have the requisite "capacity" if it had *any* potential to be configured for that purpose. Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 30 FCC Rcd. 7961, 7974 (2015).

The FCC's definition of an ATDS, among other things, was eventually challenged in *ACA Int'l v. FCC*, 885 F.3d 687 (D.C. Cir. 2018). In part of their challenge, Petitioners disputed the FCC's conclusion that equipment qualifies as an ATDS so long as it can automatically dial from a list of numbers, even if it does not have the capacity to store or produce random or sequential numbers. *Id.* at 694. The D.C. Circuit concluded the FCC's interpretation of "capacity" was overbroad because the "straightforward understanding of the Commission's ruling is that all smartphones qualify as autodialers because they have the inherent 'capacity' to gain ATDS functionality by downloading an app." *Id.* at 700. Further, the court reasoned "[i]t cannot be the case that every uninvited communication from a smartphone infringes federal law, and that nearly every American is a TCPA-violator-in-waiting, if not a violator-in-fact." *Id.* at 698.

Shortly after the *ACA Int'l v. FCC* decision, the Ninth Circuit in *Marks v. Crunch San Diego, LLC* clarified the definition of an ATDS as: "equipment which has the capacity—(1) to store numbers to be called or (2) to produce numbers to be called, using a random or sequential number generator—and to dial such numbers automatically." *Marks*, 904 F.3d 1041, 1053. The court concluded that the statutory definition of an ATDS

"includes a device that stores telephone numbers to be called, whether or not those numbers have been generated by a random or sequential number generator." *Id.* at 1043. It is the *Marks* decision that is at issue for this motion to dismiss.

### 2. Sirius XM's First Amendment Challenge

Now, Sirius XM challenges the Ninth Circuit's definition of an ATDS to include equipment that "has the capacity . . . to store numbers to be called . . . and to dial such numbers" automatically. *Marks*, 904 F.3d at 1052. Sirius XM states the definition of an ATDS is an overbroad restriction on protected speech. (Doc. No. 55-1 at 16.) Sirius XM's challenge starts with the premise that "[a]s currently programmed, however, hundreds of millions of smartphones have that capacity." (Doc. No. 55-1 at 17.) For example, Sirius XM argues iPhones equipped with the "Do Not Disturb" feature may be subjected to TCPA liability because an iPhone user who wishes not to be disturbed may activate this feature and thereby instruct her phone to send automated responses, either to all incoming calls and messages or to a select group from a contact list. (*Id.*) Interpreting the ATDS provision in the way held by *Marks* would create an absurd result, Sirius XM argues.

Importantly, as an initial matter, the Court notes that Sirius XM is not actually challenging the TCPA and its ATDS provision itself as unconstitutional. Indeed, Sirius XM's argument cannot be construed as an attack on the ATDS provision as it currently stands today. Rather, Sirius XM appears to disagree with the Ninth Circuit's *interpretation* of the ATDS provision in *Marks*, arguing that the way the Ninth Circuit has defined an ATDS results in an overbroad restriction on speech.

Turning to Sirius XM's objection to the Ninth Circuit's reading of the ATDS provision in *Marks*, Sirius XM argues, "[i]n *Marks* itself, the Ninth Circuit did not discuss whether its interpretation transformed smartphones into ATDSs, nor did it assess the constitutional implications of that result." (Doc. No. 55-1 at 19.) However, in *Duguid v. Facebook, Inc.*—which was decided after *Marks*—the Ninth Circuit examined the very issue Sirius XM raises now. In *Duguid*, the plaintiff, Noah Duguid claimed that Facebook used an ATDS to alert users, as a security precaution, when their account was accessed

from an unrecognized device or browser. *See* 926 F.3d 1146, 1149 (9th Cir. 2019). But somehow, Duguid received the messages despite not being a Facebook user and never having consented to such security alerts. *Id.* Duguid sued Facebook for violations of the TCPA. *Id.* In defense, Facebook challenged the sufficiency of the allegations that it used an ATDS, and additionally asserted a constitutional challenge to the TCPA. *Id.* Facebook contended that the TCPA's inclusion of a government debt collector exception rendered the statute unconstitutional in violation of the First Amendment. *Id.* The Ninth Circuit agreed, and held that the exception was "content-based and incompatible with the First Amendment." *Id.* Unwilling to invalidate the entire TCPA, however, the Ninth Circuit severed the exception from the rest of the statute. *Id.*

In addressing the sufficiency of the allegations in *Duguid*, the Ninth Circuit explicitly noted a similar argument Sirius XM is now asserting. Specifically, in response to Facebook's contention that the equipment Duguid characterized in his complaint was not an ATDS, the Ninth Circuit concluded that *Marks* foreclosed that position. *Id.* at 1151. The court reaffirmed the ATDS definition articulated in *Marks*: "an ATDS need not be able to use a random or sequential generator to store numbers—it suffices to merely have the capacity to 'store numbers to be called' and 'to dial such numbers automatically.'" *Id.* In opposition this definition, Facebook asserted a challenge similar to Sirius XM's argument here:

> Facebook responds that *Marks* cannot possibly mean what it says, lest the TCPA be understood to cover ubiquitous devices and commonplace consumer communications. In particular, Facebook cautions, such an expansive reading of *Marks* would capture smartphones because they can store numbers and, using built-in automated response technology, dial those numbers automatically. And if smartphones are ATDSs, then using them to place a call—even without using the automated dialing functionality—violates the TCPA.

*Id.*

To avoid this result, Facebook urged the court to adopt a distinction between calls that are made "proactively" and "reactively." *Id.* Facebook pointed to the statutory

14

requirement that an ATDS store numbers "to be called." 47 U.S.C. § 227(a)(1)(A). The ATDS at issue in *Marks* was designed to send promotional text messages to a list of stored numbers—"a proactive advertising campaign." *Marks*, 926 F.3d at 1151. By contrast, Facebook in *Duguid* distinguished its equipment, arguing that it stored numbers "to be called" only reflexively as a preprogrammed response. *Id.* Facebook then argued *Marks* should be inapplicable to such purely "responsive messages," because numbers stored to send such messages were not stored "to be called." *Id.* According to Facebook, drawing this distinction would circumvent the outcome of deeming smartphones an ATDS and rendering the ATDS provision, as construed by *Marks*, unconstitutional. *Id.* However, the Ninth Circuit rejected Facebook's contention, stating "[w]e are unpersuaded by Facebook's strained reading of *Marks* and the TCPA." *Id.* The court reasoned that "Facebook's argument that any ATDS definition should avoid implicating smartphones provides no reason to adopt the proposed active-reflexive distinction." *Id.* at 1152.

As *Duguid* demonstrates, the Ninth Circuit was well aware of the argument Sirius XM is offering, and rejected it in the context of a motion to dismiss. Indeed, the Ninth Circuit had an opportunity in *Duguid* to revisit the ATDS definition it articulated in *Marks*. Not only did it uphold the definition, it was presented with the same argument Sirius XM now makes, and specifically stated it was not persuaded by such a reading of *Marks* and the TCPA. *Marks*, 926 F.3d at 1151. *Marks* and *Duguid* are recent, binding authority on this Court, and so, this Court is bound to follow the decisions of the Ninth Circuit.

Additionally, the arguments offered by Sirius XM presents this Court with no reason to deviate from binding authority. In its own words, "Sirius XM's constitutional argument is [] simple: because nearly every smartphone has the capacity to store and automatically dial numbers, nearly every smartphone qualifies as an ATDS under the interpretation set out in *Marks*. As a result, the ATDS provision violates the First Amendment." (Doc. No. 63 at 10.) But Sirius XM is not actually asserting a direct challenge to the TCPA or its statutory provisions. No argument is made that Sirius XM used a smartphone to call Plaintiffs, and so, the provision as applied to it is unconstitutional. Neither is Sirius XM

15

17-CV-02252-AJB-JMA

asserting a facial challenge to the TCPA. Sirius XM is not even arguing that this case is somehow distinguishable from *Marks*, and so this Court should not follow it. Instead, Sirius XM's fundamental disagreement is with the Ninth Circuit's decision. However, Sirius XM has not provided any authority holding that a district court may strike a statute or statutory provision based on a binding circuit court's opinion. Under the principle of stare decisis, federal district courts "are bound by earlier published decisions" of the Supreme Court and the circuit court of appeals in which their district sits. *See Oregon Nat. Desert Ass'n v. U.S. Forest Serv.*, 550 F.3d 778, 782 (9th Cir. 2008). Federal judges "may not respectfully (or disrespectfully) disagree" with their colleagues on their "own court of appeals who have ruled on a controlling legal issue, or with Supreme Court Justices writing for a majority of the Court." *Hart v. Massanari*, 266 F.3d 1155, 1170 (9th Cir. 2001). "Binding authority must be followed unless and until overruled by a body competent to do so." *Id.* As neither *Marks* nor *Duguid* have been overruled, this Court is bound by these decisions and rejects Sirius XM's constitutional attacks.

Even if the Court were to construe Sirius XM's argument as a direct attack on the constitutionality of the TCPA and ATDS provisions, the Court finds that there is ample binding authority holding that the ATDS provision, as promulgated by Congress, survives intermediate scrutiny. *See Moser v. F.C.C.*, 46 F.3d 970, 975 (9th Cir. 1995) ("The provision in the [TCPA] of 1991 banning automated, prerecorded calls to residences is content-neutral. Congress adequately demonstrated that such calls pose a threat to residential privacy. The ban is narrowly tailored to advance that interest, and leaves open ample alternative channels of communication. Thus, it does not violate the First Amendment."); *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 876 (9th Cir. 2014), aff'd, 136 S. Ct. 663 (2016), as revised (Feb. 9, 2016) (reaffirming *Moser* and 47 U.S.C. § 227(b)(1)(A)(iii) of the TCPA as constitutional); *Duguid*, 926 F.3d at 1157 ("Excising the debt-collection exception preserves the fundamental purpose of the TCPA and leaves us with the same content-neutral TCPA that we upheld—in a manner consistent with

*Reed*—in *Moser* and *Gomez*."); *Gallion*, 772 F. App'x at 605–06 (reaffirming *Duguid* and upholding TCPA and ATDS provision as constitutional).

Accordingly, the Court **DENIES** Sirius XM's motion to dismiss Plaintiffs' Complaint.

## V. CONCLUSION

In light of the foregoing, the Court **DENIES WITHOUT PREJUDICE** Sirius XM's motion to strike Plaintiffs' class allegations and **DENIES** Sirius XM's motion to dismiss Plaintiffs' Complaint.

**IT IS SO ORDERED**.

Dated: February 25, 2020

Hon. Anthony J. Battaglia
United States District Judge